# FOR PUBLICATION




FILED FEB 21 2020 CLERK U.S. BANKRUPTCY COURT CENTRAL DISTRICT OF CALIFORNIA BY: Deputy Clerk

ENTERED FEB 21 2020 CLERK U.S. BANKRUPTCY COURT CENTRAL DISTRICT OF CALIFORNIA BY: Deputy Clerk

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>Progressive Solutions, Inc.,<br><br>Debtor. | Case No. 8:18-bk-14277-SC<br><br>Chapter 11<br><br>**ORDER REGARDING MOTION FOR ORDER AUTHORIZING AMENDMENT OF CHAPTER 11 PETITION TO ELECT SUBCHAPTER V, AND CONFIRMATION OF AMENDED CHAPTER 11 SMALL BUSINESS PLAN**<br><br>**Hearing Date:**<br>Date: February 20, 2020<br>Time: 11:00 a.m.<br>Courtroom 5C<br>411 W. Fourth Street,<br>Santa Ana, CA 92701 |

Before the Court are two Motions filed by Small Business Chapter 11 Debtor Progressive Solutions on January 30, 2020: 1) Motion for Order Authorizing Amendment of Chapter 11 Petition regarding Subchapter V Election and Extension of Plan Deadline [Dk. 143], and 2) Motion for Order Confirming Amended Chapter 11 Small Business Plan [Dk. 145]. Appearing for the Debtor was Lewis Landau, Esq. Other

1

appearances included Michael Hauser, Esq. and Frank Cadigan, Esq. for the Office of the United States Trustee, Monique Jewett-Brewster, Esq. for Creditor, City of Oakland, and Andre Khansari, Esq. for Creditor, Ecker Capital.

The first motion, entitled Motion for Order Authorizing Amendment of Chapter 11 Petition regarding Subchapter V Election and Extension of Plan Deadline makes two seemingly simple requests. A Small Business-designated Chapter 11 case (not to be confused with a Subchapter V small business case), filed on November 21, 2018, requests that this Court authorize the amendment of the original Chapter 11 petition to permit the re-designation of its status as a Subchapter V small business debtor, and, further, that the Court establish or modify certain deadlines set out in the newly enacted Small Business Reorganization Act of 2019 (hereinafter "SBRA").

The second motion, entitled Motion for Order Confirming Amended Chapter 11 Small Business Plan, (the "Confirmation Motion") requests that this Court confirm an amended Chapter 11 Plan that supposedly complied with the terms of the SBRA. With respect to the Confirmation Motion, for the reasons apparent and stated below, it is denied without prejudice.

## I. The Small Business Reorganization Act of 2019 (Public Law No. 116-54)

The Small Business Reorganization Act of 2019 (H.R. 3311) was introduced into the United States House of Representatives on June 18, 2019[1], and immediately referred to the House Committee on the Judiciary. On June 25, 2019, hearings were held on "Oversight of Bankruptcy Law and Legislative Proposals" before the Subcommittee on Antitrust, Commercial, & Administrative Law. Of pertinence to H.R. 3311, the following witnesses testified: Representative Ben Cline (R-VA); Robert J. Keach, on behalf of the

---

[1] There were three original co-sponsors, Representatives David Cicilline (D-RI), Doug Collins (R-GA) and Steve Cohen (D-TN). Many more co-sponsors were later added. Also, in the previous Congress, in 2017, Senator Charles Grassley introduced the same bill in the United States Senate.

1  American Bankruptcy Institute; and former Bankruptcy Judge Thomas Small on behalf
2  of the National Bankruptcy Conference.
3      Thereafter, on June 28, 2019, the bill was referred to the Judiciary Committee's
4  Subcommittee on Antitrust, Commercial, and Administrative Law. On July 11, 2019, the
5  Subcommittee conducted a mark-up session and on the same day the bill was ordered to
6  be reported by voice vote. On July 23, 2019, the bill was reported by the Judiciary
7  Committee (Judiciary Committee Report 116-171) to the House of Representatives by
8  voice vote. The report (which historically is drafted by professional staff of the assigned
9  Subcommittee) reflects that the Judiciary Committee submitted the bill without
10  amendment and with recommendation that the bill pass the House of Representatives.
11      On the same day as the House Judiciary Committee reported the bill, on July 23,
12  2019, the bill was placed on the House of Representative's Union Calendar (Calendar
13  No. 131), and at 6:25 pm (eastern time) that day, a motion to suspend the House Rules
14  and pass the bill was made. The bill was considered under the suspension of the rules
15  (Cong. Rec. H7217-7220), and the debate lasted four minutes, from 6:25 pm (eastern
16  time) through 6:29 pm (eastern time), although the rules permitted forty minutes of
17  debate.
18      H.R. 3311, on motion to suspend the rules, was passed by voice vote on July 23,
19  2019. (Cong. Rec. H7217-7219). The bill was received by the United States Senate on
20  July 24, 2019, and on August 1, 2019 was passed by the United States Senate without
21  amendment or debate. (Cong. Rec. S5321). It went exactly like this:
22
23      The PRESIDING OFFICER. The clerk will read the titles of the bills, en bloc.
24      The senior assistant legislative clerk read as follows:
25
26      ***
27      ***
28

A bill (H.R. 3311) to amend chapter 11 of title 11, United States Code, to address reorganization of small businesses, and for other purposes.

Mr. McCONNELL. I ask unanimous consent that the bills, en bloc, be considered read a third time.

The PRESIDING OFFICER. Without objection, it is so ordered.

The bills were ordered to a third reading and were read the third time, en bloc.

Mr. McCONNELL. I know of no further debate on the bills, en bloc.

The PRESIDING OFFICER. If there is no further debate, the question is, Shall the bills pass, en bloc?

The bills (H.R. 2336, H.R. 2938, H.R. 3304, H.R. 3311) were passed, en bloc.

*Congressional Record S5321.*

On August 1, 2019, the Senate advised the House of the passage without amendment, the bill was engrossed, and was presented to the President on August 13, 2019. The bill was signed into law on August 23, 2019, becoming Public Law No. 116-54.

Certain "legislative history" of H.R. 3311 exists, including the Report from the House Committee on the Judiciary (Report No. 116-54.) The report contains, *inter alia*, the following statement:

NEED FOR THE LEGISLATION

Notwithstanding the 2005 Amendments, small business chapter 11 cases continue to encounter difficulty in successfully reorganizing. Based upon their respective reviews of this issue, the NBC and the ABI developed recommendations to improve the reorganization process for small business

chapter 11 debtors. H.R. 3311 is largely derived from these recommendations. As the bill's sponsor, Representative Ben Cline (R-VA), explained at the hearing held by the Subcommittee on Antitrust, Commercial, and Administrative Law on June 25, 2019 at which H.R. 3311 was considered, the legislation allows

these debtors ``to file bankruptcy in a timely, cost-effective manner, and hopefully allows them to remain in business" which ``not only benefits the owners, but employees, suppliers, customers, and others who rely on that business.'

(Citing the) Unofficial Transcript of Oversight of Bankruptcy Law and Legislative Proposals: Hearing Before the Subcomm. on Antitrust, Commercial, & Admin. Law of the H. Comm. on the Judiciary, 116th Cong. 27 (2019) (on file with H. Comm. on the Judiciary staff).

This might be the only official legislative history in existence; however, another example is contained in an official public release and "fact sheet" presented by the Chairman of the Senate Committee on the Judiciary, Charles "Chuck" Grassley, accompanying his April 9, 2019-introduced version[2] of the legislation (which is the same as H.R. 3311 as passed.) Senator Grassley's statement further sets forth that "[t]he SBRA was crafted in consultation with the National Bankruptcy Conference, American Bankruptcy Institute and National Conference of Bankruptcy Judges and incorporates input from numerous stakeholders ranging from commercial lenders to the U.S. Trustee."[3]

Public statements from various cosponsors of the Senate version (which is the final version signed into law), include:

---

[2] S. 1091, introduced on April 9, 2019. Originally cosponsored by Senators Sheldon Whitehouse (D-Rhode Island), Thom Tillis (R-North Carolina), Amy Klobuchar (D. Minnesota), Joni Ernst (R-Iowa) and Richard Blumenthal (D-Conn.)

[3] https://www.grassley.senate.gov/news/news-releases/grassley-bipartisan-colleagues-introduce-legislation-help-small-businesses-0 (accessed on February 19, 2020.)

"Our bankruptcy system is designed to help highly complex businesses reorganize after falling on hard times, but for many small businesses going through bankruptcy, these requirements can create unnecessary burdens that stall recovery. The Small Business Reorganization Act takes into account the unique needs of small businesses and streamlines existing reorganization processes. A well-functioning bankruptcy system, specifically for small businesses, allows businesses to reorganize, preserve jobs, maximize the value of assets and ensure the proper allocation of resources."

- Sen. Charles Grassley

"The strength of Rhode Island's economy depends on the strength of the nearly one hundred thousand small businesses that have set up shop here. We need to improve the bankruptcy process to give smaller employers who are struggling better tools to get back on their feet and preserve jobs."

- Sen. Sheldon Whitehouse

"We need to make sure that businesses on Main Street have the same opportunities as big businesses to utilize the protections offered by our bankruptcy laws. This legislation will help streamline bankruptcy procedures for small businesses, ensuring that when mom-and-pop businesses fall on hard times, they have a chance to recover and be successful."

- Sen. Amy Klobuchar

"Iowa is home to more than 267,700 small businesses, making up just over 99% of the businesses in our state. While many of these businesses are thriving, those that experience financial distress face an overly burdensome and costly bankruptcy system. Our bipartisan bill would streamline the reorganization

process, preserve jobs, and allow small business owners to maintain control and negotiate a successful reorganization."

- Sen. Joni Ernst

"All too often, an outdated bankruptcy system forces small businesses to close their doors when they hit hard times. When a small business owner requires relief from overwhelming debt, bankruptcy should offer a path forward to preserve jobs – not an endless, money-draining process. Our bipartisan legislation implements thoughtful, commonsense reforms to make our bankruptcy system work for small businesses instead of against them."

- Senator Richard Blumenthal

## II. The Effective Date of the SBRA of 2019 and the Question of Applicability to Pending Cases

The SBRA became effective on February 19, 2020.[4] During the hearing before this Court, one creditor counsel (representing the City of Oakland) argued that applying the SBRA to pending cases was impermissible as a retroactive application of the SBRA.[5] During the discussion with the learned City of Oakland counsel, the Court and counsel entertained various issues, including those arising from the recent decision from the Bankruptcy Court for the District of Delaware in *In re Exide Technologies, Inc.* Case No. 13-11482, January 9, 2020 [Dk. 5296], where the Office of the United States Trustee successfully argued that the 2017 change in law, increasing and changing the formula for U.S. Trustee Fees, applied to pending cases. The *Exide Technologies* case was filed in

---

[4] Public Law No. 116-54. "SEC. 5. EFFECTIVE DATE. This Act and the amendments made by this Act shall take effect 180 days after the date of enactment of this Act."

[5] The Court fully incorporates all of the discussions, arguments, legal reasoning, and this Court's additional findings of fact and conclusions or law made during the hearing into this opinion. This Court will also endeavor to have the audio transcript of the hearing embedded into the docket of this case when the technology to do so becomes available, which is expected shortly.

7

2013 (and has confirmed its Plan), and the quarterly fees rose from $30,000.00 to $250,000.00 in 2017 due to the change in law.

The Court also discussed with Oakland's learned counsel the provisions of Section 5 of the SBRA (involving a change in law to all preference actions filed under section 547 of the Bankruptcy Code) and their applicability to pending litigation. It was pointed out, and conceded by all parties present at the hearing, that nowhere in the SBRA are there stated limitations to the application of the SBRA (including new preference recovery provisions) to pending cases.

The Court also asked for any examples where the City of Oakland, or any other creditor, had rights that were vested by rulings of the Court, or other events occurring during the pendency of the present bankruptcy case, that would be disturbed by the designation of the case as a Subchapter V case. No examples were brought to the forefront, and after a complete study of the record and pleadings in this case, the Court cannot find any rights of parties that are vested that would be affected. Indeed, earlier in the case, the City of Oakland had actually filed a Disclosure Statement and Plan, and then voluntarily withdrew those pleadings.

Early on, in arguments brought forward by the Office of the United States Trustee (hereinafter "OUST"), it was conceded that the OUST was not advancing any retroactivity arguments, and that, as an example, a Chapter 7 case, pending prior to the effective date of the SBRA, could convert to Chapter 11, Subchapter V after the SBRA date of enactment.[6]

The only comprehensive objections raised at the hearing by counsel of the Office of United States Trustee were procedural in nature. The OUST made very good points regarding the practicality and scheduling issues arising from a SBRA designation of a

---

[6] Even more interesting, what if the OUST had a section 707 Motion to Dismiss or Convert a chapter 7 case pending before February 19, 2020. Why couldn't the Chapter 7 Debtor convert to Chapter 11, Subchapter V on or after February 19, 2020? The OUST was asked this question at the hearing, and the answer seemed to be (and the Court paraphrases) "Sure, why not?" This further reinforces the OUST's position that there is really no "retroactivity" argument available with respect to the SBRA.

pre-effective date pending case.[7] The OUST raised, for instance, the problem of holding a timely Initial Debtor Interview (the "IDI"), and a timely Section 341(a) Meeting of Creditors that would include a Subchapter V Trustee participation. The OUST raised the good question of the required Debtor Status Conference Report and the initial Status Conference for the Subchapter V case, but again conceded that there was no statutory provision or rule which prohibited the Court from extending the time to hold the status conference or submit a report. The OUST raised the timing issue of the 60 day Plan filing requirement (from the Entry of Order for Relief), but then conceded that the Court may extend that time for cause, as long as the delay was not attributable the Debtor. The Court points out that all of these timing requirements could be reset in order to provide due process to all parties involved, unless vested rights of parties would be abridged or otherwise prejudiced.

This Court finds that while the procedural tasks of setting an IDI, a section 341(a) meeting of creditors, and a new Subchapter V Status Conference (as long as the Debtor did not object to any of these actions), might be redundant or procedurally awkward, there are no bases in law or rules to prohibit a resetting or rescheduling of these procedural matters. If any vested rights of a debtor or any other party in interest would be in jeopardy, this Court concedes that rescheduling would likely be a violation of due process. On the other hand, if any party holding vested rights approved of a re-setting or rescheduling of such events objected, waiver of those rights could be exercised.

Also, if the Debtor declined to undertake the responsibilities and duties under Subchapter V, as suggested by the OUST, the Court would not approve a resetting and rescheduling of such meetings, hearings or deadlines, and would take steps to remedy such behavior.

The Court was entirely appreciative of the OUST's suggestion that the Debtor simply (and orally) dismiss the pending case and file it again the following day. The

---

[7] What if a chapter 11 Debtor two or three weeks into a post-February 19, 2020 filed case, decided to re-designate as a Subchapter V case? The same re-setting of dates Motion would have to be heard, as here, and the Debtor would similarly face the challenge to show that "the need for an extension is attributable to circumstances for which the debtor should not justly be held accountable." That might be a problem for a debtor.

9

1 | Court, during the hearing, polled the appearing counsels on their support or opposition
2 | to such an action, and to its surprise, no creditor objected. The Court asked Debtor's
3 | counsel to consider such an action, and the Debtor declined to make such an oral
4 | Motion to Dismiss. Without notice to all parties in the case, this Court was unwilling to
5 | dismiss the case, *sua sponte*.
6 |     The Court is not unmindful of the additional efforts the OUST, the newly
7 | appointed Subchapter V Trustee, the creditors, or this Court might have to undertake to
8 | administer a re-designated Subchapter V case. But, the whole, the entire whole, of the
9 | legislative history and statements of Congress teaches the Court that the primary
10 | purpose of the SBRA is to promote successful reorganizations using the tools that are
11 | now available under current law. The decision to proceed and hopefully confirm a
12 | Subchapter V plan of reorganization under the law as it exists today, after February 19,
13 | 2020, is further supported by the teaching of the United States Supreme Court in
14 | *Landgraf v. USI Film Products*, 551 U.S. 244 (1994), which said, "The first is the rule
15 | that 'a court is to apply the law in effect at the time it renders its decision,' Bradley, 416
16 | U. S., at 711." Appreciating Landgraf, it remains the Court's duty to ensure that no
17 | vested rights have been altered by application of a changed law. In this instance, that
18 | has not occurred.
19 |     To recap, this Court has found no legal reason to restrict a pending Chapter 11
20 | case to re-designate to a Subchapter V case, on the facts underlying the Motion. No
21 | party has provided any legal reasoning to support a blanket prohibition of such re-
22 | designation by the Debtor. The arguments against pending case being designated by the
23 | Debtor as a Subchapter V case all have to do with practicality and not legality. However,
24 | there remains one final, procedural problem requiring denial of the Motion.
25 | ///

### III. The Motion is Denied without Prejudice.

The Motion is denied because the actual requests made in the Motion (to approve such a re-designation) are procedurally infirm. Federal Bankruptcy Rule 1009 reads in pertinent part:

> Rule 1009 – Amendments of Voluntary Petitions, Lists, Schedules and Statements
>
> (a) General Right To Amend. A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed. The debtor shall give notice of the amendment to the trustee and to any entity affected thereby. On motion of a party in interest, after notice and a hearing, the court may order any voluntary petition, list, schedule, or statement to be amended and the clerk shall give notice of the amendment to entities designated by the court."

*Federal Bankruptcy Rule 1009(a).*

This Court concludes that an amendment to a Bankruptcy Petition can be made at any time as a matter of course at any time before the case is closed. (The last sentence of Rule 1009 subsection (a) is non-applicable to debtor motions, as clarified in the 1987 Committee Comments to the Rules. That concluding sentence presents for times when non-debtor parties are demanding that the debtor make changes to the petition or schedules.)

To set a standard or precedent requiring a debtor to seek leave to amend a petition or schedule is improper, especially in light of Rule 1009. As there is no legal requirement to have a court grant leave to amend the petition or schedules, and there are clear procedures for parties to later object to any amendments or designations (including a designation as a Subchapter V debtor within the new federal rules for the SBRA), this Court finds that the Motion is unnecessary and not required by law. When and if there is a designation by amendment to the Petition, opposing parties may file objections on a timely basis, and the Court may undertake eligibility considerations.

Further, the second request within the Motion desires this Court to set deadlines appropriate to the implementation of the SBRA. This request is premature, as no Subchapter V designation had been made by the Debtor at the time of the filing of the motion and the hearing.

Finally, as stated earlier, the Debtor seeks by its Motion to Confirm a Subchapter V Plan of Reorganization, recently filed. This Motion is premature for the reasons stated above and is denied without prejudice.[8]

IT IS SO ORDERED.

## ##

Dated: February 21, 2020

Scott C. Clarkson
United States Bankruptcy Judge

---

[8] Finally, the Court has observed that the Debtor has now amended its Petition (as of February 20, 2020) and has re-designated itself as a case under Subchapter V. [Dk. 154.]